UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
PAUL HOLOWECKI, et al.,          :
                                 :
            Plaintiffs,          :
                                 :        02 Civ. 3355 (JSR)
        -v-                      :
                                 :        OPINION AND ORDER
FEDERAL EXPRESS CORP.,           :
                                 :
            Defendant.           :
------------------------------------x

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:                       │
│ DATE FILED: 7 31 09          │
└─────────────────────────────┘
```

JED S. RAKOFF, U.S.D.J.

        This aging age discrimination case, having made its way to
the Supreme Court and back, is finally ready for final judgment.

        The case was commenced in 2002 by twelve current and former
employees of defendant Federal Express Corporation ("Fedex"), suing
on behalf of themselves and seeking certification to represent other
similarly situated FedEx employees.  Plaintiffs allege that Fedex
utilized various employment procedures that discriminated on the
basis of age, in violation of the Age Discrimination in Employment
Act ("ADEA"), 29 U.S.C. §§ 621 et seq., the New York State Human
Rights Law, N.Y. Exec. Law §§ 290 et seq., and the laws of several
other states.  On October 9, 2002, the Honorable Lawrence M. McKenna,
to whom the case was first assigned, dismissed the action with
prejudice, holding that plaintiffs' claims were time-barred.  See
Holowecki v. Fed. Express Corp., 02 Civ. 33552002, WL 31260266
(S.D.N.Y. Oct. 9, 2002).  Plaintiffs appealed, and more than three
years later, on March 8, 2006, the Second Circuit Court of Appeals
reversed, holding that plaintiffs who did not file a timely EEOC
complaint, including plaintiff Paul Holowecki, could "piggyback" onto

plaintiff Patricia Kennedy's EEOC discrimination charge, because, on
the face of plaintiffs' Complaint, such claims arose out of similar
discriminatory treatment in the same time frame.  See Holowecki v.
Fed. Express Corp., 440 F.3d 558, 569 (2d Cir. 2006).

On March 15, 2006, the case was reassigned to Chief Judge
Mukasey, and on December 6, 2006, the case was further reassigned to
the undersigned.  But shortly thereafter the Supreme Court granted
certiorari and the case was thereupon placed on suspense until the
Supreme Court, in 2008, affirmed the Second Circuit's ruling.  Fed.
Express Corp. v. Holowecki, 128 S. Ct. 1147 (2008).  The case then
returned to this Court, whereupon FedEx moved, pursuant to Fed. R.
Civ. P. 56, for summary judgment dismissing all claims brought by all
plaintiffs.  After voluminous briefing, the Court heard oral argument
on FedEx's motions, and, by Order dated December 31, 2008, the Court
granted FedEx's motions in their entirety.  This Memorandum explains
the reason for that Order and directs the entry of final judgment.

Generally speaking, plaintiffs allege (and seek to prove)
that FedEx engaged in a laundry list of discriminatory employment
practices, including, inter alia, redistributing overtime and regular
hours from older to younger couriers, imposing more stringent
productivity goals and job evaluation requirements on older couriers,
and giving preferential treatment to younger couriers.  Complaint
("Compl.") ¶ 12.  These discriminatory practices were themselves the
result, plaintiffs contend, of a compensation system called "Best
Practices Pays" ("BPP") and a program called "Minimum Acceptable

2

Performance Standards" ("MAPS"), id. ¶¶ 13-14, 19, although it is far from clear that any plaintiff still maintains that these programs are at issue in this case.  In any event, the undisputed facts as to each plaintiff, or, where disputed, taken most favorably to the applicable plaintiff, are as follows.

Paul Holowecki began working as a full-time courier for FedEx in 1983, received a permanent regular delivery route in 1987, and was terminated on February 8, 2000, at age 40.  Def. 56.1 ¶¶ 1-3, Holowecki 56.1 ¶¶ 1-4.  Over time, Holowecki's daily "stop count" increased by 10-20%, an increase that Holowecki attributes to his manager favoring a younger courier (Silvia Persic) and "dumping" Ms. Persic's stops onto Holowecki.  Holowecki 56.1 ¶¶ 8-9.  Holowecki himself noted, however, that the workload of all couriers in his station increased over time, because more businesses were opening on his route.  Pl. Ex. 2 at 29, 131-32.  Despite the increase, Holowecki never had any problems with meeting productivity goals, and never received written discipline for failing to meet his stops.  Def. 56.1 ¶ 10, Holowecki 56.1 ¶ 10.[1]

---

[1] FedEx has a disciplinary system whereby three written notices of an employment deficiency (which can take the form of either Performance Reminders or Warning Letters) or three unsatisfactory performance reviews in a 12-month period may result in termination of employment.  Declaration of Tricia J. Lee ("Lee Decl.") Ex. 2.  When an employee fails to show improvement or receives two written notices, he or she is given a paid day off work (a "Decision Day") to decide whether he or she wants to continue working at FedEx by improving his or her performance.  Id. Exs. 1 and 2.  For minor behavioral or performance issues, an employee may receive a "verbal counseling session," which does not constitute a disciplinary action.  Id. Ex. 1.  More serious misconduct, however, may result in termination on the first or second instance.  Id. Exs. 1 and 2.

In January 2000, Ms. Persic complained to her manager that
Holowecki had called her various vulgar, derogatory names.
Declaration of Nanette Malebranche ("Malebranche Decl.") ¶ 5; Pl. Ex.
2 at 49-50, Ex. 5 at 17-18.  In response, Holowecki was suspended
with pay.  Pl. Ex. 2 at 50-51.  Malebranche, a FedEx manager,
questioned Holowecki about the allegations, and he denied making the
comments.  Def. 56.1 ¶ 13, Holowecki 56.1 ¶ 14, Pl. Ex. 2 at 49-52.
At her deposition, Malebranche testified that Holowecki was
terminated for unacceptable conduct toward a female courier.
Holowecki 56.1 ¶ 16, Pl. Ex. 5 at 17-18.  After refreshing her
recollection with a memorandum that she authored concerning
Holowecki's conduct in 2000, Malebranche submitted a declaration
stating that FedEx questioned other employees, who corroborated
Persic's allegations.  Malebranche Decl. ¶ 6.  Thereafter, Holowecki
was terminated.  Pl. Ex. 2 at 49-53.  Holowecki stated that age was a
factor in his termination because of his "years of service" and
"age," Pl. Ex. 2 at 62, but also stated that he does not believe that
he was singled out for termination because of those factors.  Pl. Ex.
2 at 64.  Holowecki states "I believe I was targeted because of my
age and tenure with FedEx.  I was progressing too far in the pay
scale and my pension was growing so I was becoming a liability to
FedEx."  Pl. Ex. 4, ¶ 19.  However, Holowecki never heard any
comments about age, either from management or younger couriers.  Pl.
Ex. 2 at 74-75.

Kevin McQuillan was a full time FedEx courier from 1984 until
March 30, 1998, when he was terminated at age 42.  Def. 56.1 ¶ 3,

4

McQuillan 56.1 ¶ 3.  McQuillan received fourteen warning letters or performance reminders for a variety of issues during the course of his employment.  Def. 56.1 ¶ 7, McQuillan 56.1 ¶ 7.  On February 19, 1998, McQuillan complained that he had too many packages to deliver, Def. 56.1 ¶ 15, McQuillan 56.1 ¶ 15, but later that day, McQuillan's manager found him parked in front of a Dunkin Donuts, resulting in a Performance Reminder.  Id.; Def. 56.1 Ex. A at 162-63.  Thereafter, McQuillan missed his on-road goals on multiple occasions, resulting in another Performance Reminder and a "Decision Day."  Def. 56.1 ¶ 16, McQuillan 56.1 ¶ 16.

On March 17, 1998, a female co-worker complained that McQuillan was "always touching her" and made her feel uncomfortable, an allegation that McQuillan denied.  Def. 56.1 ¶ 17, McQuillan 56.1 ¶ 17.  A week and a half later, a FedEx customer called to complain that McQuillan was behaving inappropriately towards its female employees, and a written statement was made.  Pl. Ex. 9 ¶ 11, Def. 56.1 ¶¶ 18-19, McQuillan 56.1 ¶¶ 19-20.  McQuillan denied the allegations, stated that he merely told the employee "Hey, let's go for a stroll," and complains that he was not permitted to apologize for his statements.  McQuillan 56.1 ¶¶ 20; 27.  McQuillan received a third warning letter, resulting in his termination.  Pl. Ex. 9 ¶ 12.

McQuillan notes that he subjectively "believed" that management was looking for ways to get rid of older workers, and that his age was thus "a significant factor" in his termination.  Pl. Ex. 9 ¶ 17.  McQuillan also contends that FedEx applied the BPP program in a manner that resulted in older workers having higher stop-per-

hour goals.  Pl. Ex. 9 ¶ 8.  No one in management, however, ever
stated that their actions were motivated by age.  Def. 56.1 ¶¶ 22-23,
McQuillan 56.1 ¶¶ 23-24.  Indeed, McQuillan himself concedes that
there is no evidence and no facts that indicate that he was
terminated due to his age.  Pl. Ex. ¶ 17; Def. 56.1 Ex. A at 111.

   Steven Almendarez joined FedEx in 1976, became a full-time
courier/handler in 1979, and was terminated on April 29, 2002 at age
49.  Def. 56.1 ¶¶ 1-3, Almendarez 56.1 ¶¶ 1-3.  Almendarez received a
memo and attended meetings regarding the importance of not falsifying
company-related documents.  Def. 56.1 ¶¶ 5, 7, Almendarez 56.1 ¶¶ 6,
8.  On January 22, 1999, three days after one such meeting,
Almendarez used a wrong delivery code and scanned multiple packages
at the same address, which had the effect of increasing his stop-per-
hour productivity.  Def. 56.1 ¶ 9, Almendarez 56.1 ¶ 10.  FedEx gave
Almendarez a Warning Letter (resulting in a five-day unpaid
disciplinary suspension, Def. 56.1 ¶ 10 and Ex. F, Almendarez 56.1 ¶
11, and Almendarez stated that the falsifications — which resulted
from his misunderstanding of company policy — would not happen again.
Def. 56.1 ¶ 11, Almendarez 56.1 ¶ 12.  Almendarez also signed a
letter that warned that any FedEx employee who falsely increased
their stops-per-hour could be terminated or receive a Warning Letter.
Def. 56.1 ¶ 12, Almendarez 56.1 ¶ 13.

   During an April 11, 2002 "ride check," Almendarez started
scanning multiple packages at the same address.  Def. 56.1 ¶ 14,
Almendarez 56.1 ¶ 15.  The next week, FedEx managers observed
Almendarez making deliveries and noticed that he falsified delivery

6

entries, although Almendarez denies these allegations.  Def. 56.1 ¶¶
15-16, Almendarez 56.1 ¶¶ 16-17.  A few weeks later, FedEx security
again observed Almendarez, and again noted that Almendarez was
falsifying records, allegations which Almendarez again denies.  Def.
56.1 ¶ 17, Almendarez 56.1 ¶ 18.  Almendarez submitted a written
statement indicating that he had made some unintentional "mistakes."
Def. 56.1 Ex. K.  Almendarez was terminated on April 29, 2002, for
either falsification or "abuse of delivery codes."  Def. 56.1 ¶ 19,
Almendarez 56.1 ¶ 20.  Almendarez filed an unsuccessful appeal, Def.
56.1 Ex. M, and never filed an internal complaint alleging age
discrimination or a charge of age discrimination.  Def. 56.1 ¶¶ 24-
25, Almendarez 56.1 ¶¶ 25-26.

     Charles Moncalieri started working for FedEx as a courier in
1981.  Def. 56.1 ¶ 2, Moncalieri 56.1 ¶ 2.  In February 1989,
Moncalieri moved from New Jersey to Florida, and in March 1999,
Moncalier decided to return to New Jersey, and was offered a part-
time job with FedEx there.  Def. 56.1 ¶¶ 3-4 and Exs. E & F,
Moncalieri 56.1 ¶¶ 3-4.  Moncalieri was informed that there were no
full-time jobs available at his station, and he accordingly
voluntarily resigned from FedEx in June 2000 at age 48.  Def. 56.1 ¶¶
4-5 and Ex. F, Moncalieri 56.1 ¶¶ 1, 5.  Moncalieri contends that
younger couriers were hired at his station in July and October 1999,
Moncalieri 56.1 ¶ 4, although none of these individuals worked as
couriers at Moncalieri's station until after Moncalieri resigned.
See Declaration of Tricia J. Lee in Support of Defendant's Motion for
Summary Judgment as to Charles Moncalieri and Nancy Trompics, Ex. 1.

                                   7

Although Moncalieri "retired," he is listed as "terminated" in his employee file.  Pl. Ex. 26.  He received seven written notices before retiring, four of which were issued before he turned 40.  Def. 56.1 ¶¶ 13-14, Moncalieri 56.1 ¶¶ 13-14.  His performance ratings ranged from 5.2 to 5.9 out of 7 between 1996 and 2000, and his hourly rate was 102% of the maximum hourly rate for his market level.  Def. 56.1 ¶¶ 17, 20, Moncalieri 56.1 ¶¶ 17, 20.

Nancy Trompics began working for FedEx in 1986 at age 44, became a full-time courier in 1987, changed her status to part-time in 1998, and retired in October 2001 at age 59.  Def. 56.1 ¶¶ 7-11, Trompics 56.1 ¶¶ 7-11.  Trompics received five written notices of deficiency in her 15 years with FedEx, and only one within her last four years of employment.  Def. 56.1 Ex. L.  Her performance ratings ranged from 5.9 to 6.7 out of 7 between 1996 and 2001, and her hourly rate was 100% of the range for her market level.  Def. 56.1 ¶¶ 18, 20, Trompics 56.1 ¶¶ 18, 20.  Trompics claims that she lost hours in 1989, 1991, 1995, 1996, 1999, and 2000, Trompics 56.1 ¶ 25, but has not offered any evidence linking these decreases to age discrimination.  Indeed, in a seemingly contradictory fashion, Trompics contends that managers "would overload older couriers until I never knew who I had to go help or when my day would end."  Pl. Ex. 28 ¶ 3.  She notes that she was "worn down mentally not physically by FedEx's practices towards older couriers," and that she felt she "had no other option but to retire early."  Id. ¶¶ 4-5.

Patricia Kennedy was born in 1959, began working for FedEx as a courier in 1982, and is currently an active FedEx employee at the

Clearwater Station.  Def. 56.1 ¶¶ 2-3, Kennedy 56.1 ¶¶ 2-3.  She has
never received a written notice of deficiency, although she has
received 10 written and verbal counselings from managers, four of
which were compliments, and the remainder of which related to late
deliveries, Best Practice methods, safety issues, and starting times.
Def. 56.1 ¶ 7, Kennedy 56.1 ¶ 7, Pl. Ex. 17.  Her performance ratings
ranged from 6.3 to 6.9 out of 7 between 1997 and 2006, and she
receives the maximum hourly rate for her region.  Def. 56.1 ¶¶ 13,
15, Kennedy 56.1 ¶¶ 13, 15.

Kennedy contends that her hours decreased in 2003-05 because
her managers scheduled her to work less hours, Kennedy 56.1 ¶ 19, but
this assertion does not take into account the numerous leaves of
absences that she took during those years (81 days, 49 days, and 49
days, respectively).  Def. 56.1 Ex. M.  Kennedy also contends that
her managers tried to discourage her from taking a particular route
because they wanted someone "less senior" to have the route, and that
she "felt" that this was because of age discrimination, Def. 56.1 ¶
27, Kennedy 56.1 ¶¶ 24, 27, although she cannot point to any specific
evidence in support of this contention.  Further, Kennedy notes that
her start time was changed because of her age (without noting any
specific evidentiary basis for that contention), that she was
harassed by her manager because of the BPP program, and that "less
senior" employees were not "harassed" as much.  Def. 56.1 ¶ 28,
Kennedy 56.1 ¶ 28.  Kennedy notes that "younger" couriers include
those with "less seniority," and that new hires such as Owen Buyers

(age 52) fall into the category of employees who received preferential treatment.  Def. 56.1 Ex. A at 136-38.

Kenneth G. Mutchler was born in 1956, began working for FedEx as a courier in 1982, and is currently an active FedEx employee in Pittsburgh, Pennsylvania.  Def. 56.1 ¶ 4, Mutchler 56.1 ¶ 4.  He never received any Written Notices of Deficiency, although he has received 12 written and verbal counselings from managers, seven of which were compliments, and the remainder of which related to attendance and delivery goals.  Def. 56.1 ¶¶ 8, 11, Mutchler 56.1 ¶¶ 8, 11, Pl. Ex. 18.  Mutchler's performance ratings ranged from 5.7 to 7.0 out of 7 between 1996 and 2006, and he receives the maximum hourly rate for his region.  Def. 56.1 ¶¶ 14-15, Mutchler 56.1 ¶¶ 14-15.  His regular and overtime hours, however, began declining in 1999.  Def. 56.1 ¶ 20, Mutchler 56.1 ¶ 20.

Mutchler contends that in 1998, a younger courier with less experience received a manager position, Pl. Ex. 21, but Mutchler has not pointed to any evidence demonstrating that he applied for this position.  Mutchler also notes that he "believes" that managers considered Mutchler's age when setting his regular and overtime hours, that managers raised Mutchler's stops-per-hour as he aged, and that younger couriers were scheduled for earlier start times, more overtime, easier routes, and lower stops-per-hour.  Pl. Ex. 21.

John Demaio was born in 1957, hired by FedEx as a courier in 2001 at age 43, terminated on November 30, 2004, and thereafter reinstated on January 3, 2005.  Def. 56.1 ¶¶ 1-2, 8, 11, Ex. E, Demaio 56.1 ¶¶ 1-2, 8, 11.  On November 26, 2004, Demaio miscoded a

10

late package, which resulted in the FedEx tracking system not indicating that the package was, in fact, late. Def. 56.1 Ex. A at 78-80, Ex. B.  FedEx considers such conduct a terminable offense, id. Ex. B, and Demaio was terminated on November 30, 2004.  Id. Ex. C.  Demaio appealed his termination, contending that he had "made a mistake" and did not intend to violate any policies, and asking for "another chance."  Id. Ex. D.  Demaio made no mention of age in his appeal, although he noted that another employee, Gary Cramer, was given a "fourth chance" after "three accidents."  Id.  Demaio was reinstated on January 3, 2005.  Id. Ex. E.

Demaio contends that, beginning in 2002, FedEx reduced his regular and overtime hours, and his W2 statements reflect a decrease in income between 2002 and 2006.  Pl. Ex. 23.  As to the years 2002 and 2003, FedEx offers data demonstrating that Demaio's regular and overtime hours substantially exceeded the average hours of both older and younger couriers.  See Def. 56.1 ¶¶ 14, 19-20.  Although Demaio contends that these statistics are misleading because they include FedEx workers whose employment status changed during those years, Pl. 56.1 ¶ 14, 19-20, he has not pointed to any evidence demonstrating that his hours were below-average.  In 2004, a change in family circumstances prevented Demaio from working early morning hours. Def. 56.1 ¶ 21, Demaio 56.1 ¶ 21, Ex. A at 28-31.  FedEx thereafter asked Demaio to work more morning hours because they were "shorthanded," but Demaio refused.  Def. 56.1 Ex. A at 42-43.  In 2005, Demaio took leaves of absence from February 25, 2005 to March

11

15, 2005, and from March 31, 205 to April 25, 2005.  Def. 56.1 ¶ 23, Demaio 56.1 ¶ 23.

Demaio further contends that FedEx gave preferential treatment to Michael Margiotta, born in 1960, who is three years younger than Demaio.  Def. 56.1 ¶ 25, Demaio 56.1 ¶ 25.  Demaio notes that on one occasion he was told that he was "too old for the job," Def. 56.1 Ex. A at 80-81, but the manager who made this statement was not involved in the scheduling of hours for couriers.  Declaration of William L. Davis ("Davis Decl.") ¶¶ 5-6.  Demaio also notes that it is his "feeling" and "belief" that he is being discriminated against because of his age, but testified that he knows of no tangible facts to support that belief other than the one comment made to him regarding his age.  Def. 56.1 Ex. A at 31-38.

Donna M. Lewis joined FedEx as a courier in 1984, and was terminated in 2001 at age 50.  Def. 56.1 ¶ 2, Lewis 56.1 ¶ 2.  Lewis injured her shoulder in July 1999, and, after being on medical leave for more than 90 days, received a letter from FedEx informing her that she would be replaced in her position.  Def. 56.1 ¶¶ 3, 5, Lewis 56.1 ¶¶ 3, 5.[2]  Her manager told her over the phone that she was

---

[2] FedEx's Medical Leave of Absence and Temporary Return to Work Policies apply to all permanent full-time and part-time employees, including couriers.  Def. 56.1 ¶¶ 4, 31; 44, 62; Lewis 56.1 ¶ 4; Martinez 56.1 ¶ 31; Robertson 56.1 ¶ 44; Nelson 56.1 ¶ 62; Lee Decl. ¶¶ 19, 22, 27, 30, Exs. 5-13.  Pursuant to FedEx policy, positions for employees on medical leave remain open for a minimum of 90 days.  See Lee Decl. Exs. 5, 7-11.  Under the Temporary Return to Work program, FedEx employees who are temporarily unable to perform their full range of regular job duties are permitted to return to work for a limited amount of time in a limited capacity.  Id. Ex. 13.  Employees participating in the program who meet the job requirements of the temporary

going to lose her route, that FedEx "need[ed]" her, and that she had "to get back to work."  Def. 56.1 ¶ 7, Lewis 56.1 ¶ 7.  On March 14, 2000, Lewis wrote to her manager, Harry Sauer, stating that she was still not yet released for work.  Def. 56.1 Ex. E.  On June 27, 2001, Sauer sent a letter to Lewis (which Lewis signed and acknowledged), stating that because of her medical condition she could no longer perform the duties of a courier, that she had 90 days to find another position, that she would receive placement preference for any new position, and that she would be terminated if she did not secure a new position.  Def. 56.1 Ex. F.  FedEx offered Lewis a new position several hundred miles from her home, which she turned down.  Def. 56.1 ¶ 11, Lewis 56.1 ¶ 11.  On September 24, 2001, Lewis was terminated.  Def. 56.1 Ex. H.

Sauer never made any age-related comments to Lewis while she was on leave, but Sauer did note, without any reference to age, that Sauer's 20 year-old replacement was "doing almost twice the work that you did."  Pl. Ex. 37 at 24; Def. 56.1 ¶ 8, Lewis 56.1 ¶ 8.  Lewis recalls her managers referring to her as being among the "older employees" and noting that "You as the older group I expect more out of you . . . You should be faster."  Pl. Ex. 37 at 25.  Lewis's request for a 4-wheel-drive truck was denied, although it "appeared" that a younger employee without a back injury received one.  Id. at 27.

---

return to work job description are required to return to work. Id.

13

Kelly L. Martinez joined FedEx as a courier in 1983, and had the same route from 1987 until January 25, 2002, when she was terminated at age 43.    Def. 56.1 ¶¶ 19-20, Martinez 56.1 ¶¶ 19-20. Martinez's route became increasingly busy over time, Def. 56.1 Ex. I at 18-20, and stated that although she did not think that FedEx made her route more difficult because of her age, FedEx believed that a younger courier "could do it." Def. 56.1 Ex. I at 43-44.  Martinez contends that age discrimination against her began when she was 38, and continued until she was terminated.  Id. at 38-40.  For a period of three years her manager told her that she was too old for the route, and that a younger person could do her route.  Id.  Martinez believes that younger couriers were given better treatment than her, although she does not know their names.  Def. 56.1 ¶ 28, Martinez 56.1 ¶ 28.

In December 2000 Martinez injured her back, and by April 2001, her injury had progressed to the point where Martinez's doctor said she could no longer work as a courier, causing Martinez to go a medical leave of absence.  Def. 56.1 ¶¶ 29-32, Martinez 56.1 ¶¶ 29-32.  After being on medical leave for 90 days and in accordance with FedEx policy, Martinez was replaced in her position, and was advised that, under FedEx policy, she had an obligation to find a position that she could perform.  Def. 56.1 ¶¶ 33-34, Martinez 56.1 ¶¶ 33-34. Martinez contends that the only openings she was sent were out of state, required a college degree, or required heavy lifting.  Pl. 56.1 ¶ 36.  Because she had not secured another position, Martinez was terminated on January 25, 2002.  Def. 56.1 Ex. M.  Martinez

14

testified that "I don't know" whether FedEx's disability policy was applied differently to younger couriers, but that she just knew "that the older people are going to be using it more than younger ones unless they are injured." Def. 56.1 ¶ 38, Martinez 56.1 ¶ 38.

George Robertson began working at FedEx in 1984, became a full-time courier in 1987, and was terminated in 2000 at age 40. Def. 56.1 ¶¶ 41-42, Robertson 56.1 ¶¶ 41-42. Robertson was injured in January 2000, in an alleged work-related incident, although his workers compensation claim was denied. Def. 56.1 ¶ 43, Robertson 56.1 ¶ 43; Def. 56.1 Ex. P. In February 2000, Robertson worked on a restricted work schedule, and received medical absence pay. Def. 56.1 ¶ 45, Robertson 56.1 ¶ 45. Robertson thereafter went on a medical leave of absence, acknowledged receipt of FedEx's medical leave process, but outlined complaints about the handling of his claim and pay, without reference to age discrimination. Def. 56.1 ¶¶ 46-47, Robertson 56.1 ¶¶ 46-47. On June 9, 2000, Robertson was examined by an orthopedic physician who determined that he could return to work with lifting restrictions. Def. 56.1 ¶ 50, Robertson 56.1 ¶ 50. FedEx then requested that Robertson return to restricted work in accordance with its Temporary Return to Work policy. Def. 56.1 ¶ 51, Ex. V, Robertson 56.1 ¶ 51. On June 20, 2000, Robertson did not report to work and another doctor wrote that Robertson "remains unable to work." Def. 56.1 ¶ 52, Robertson 56.1 ¶ 52, Pl. Ex. 42. Robertson was asked to report to work against on August 8, August 25, and August 30, 2000, but did not report, contending that he was unable to work and asking instead to use his vacation days.

15

Def. 56.1 ¶¶ 52-54, Exs. W, X, Robertson 56.1 ¶¶ 52-54.  On September 7, 2000, Robertson was terminated for failing to report for Temporary Return to Work, in violation of FedEx policy P1-68.  Def. 56.1 ¶ 55, Robertson 56.1 ¶ 55, Def. 56.1 Ex. Y.  In October 2000, Robertson wrote up a list of wrongdoings by FedEx, but did not mention age discrimination, Def. 56.1 Ex. Z, although he did file an EEOC charge claiming that he was discriminated against because he was 40.  Def. 56.1 ¶ 57, Robertson 56.1 ¶ 57.

Phyllis Nelson (née Gallagher) worked as a courier for FedEx from 1986 until June 5, 1996, when she was terminated at age 39. Def. 56.1 ¶¶ 59-60, 65, Nelson 56.1 ¶¶ 59-60, 65.  Nelson was injured in 1993, at age 37.  Def. 56.1 ¶ 61, Nelson 56.1 ¶ 61.  She returned to restricted duty from December 1993 to March 1994, and at the end of her 90 days of allowed Temporary Return to Work, she returned to short-term disability leave.  Def. 56.1 ¶ 63, Nelson 56.1 ¶ 63. Nelson was placed on long-term disability leave in June 1994, at age 37.  Def. 56.1 ¶ 63, Nelson 56.1 ¶ 63.  After the maximum two years passed, Nelson was terminated on June 5, 1996, at age 39.  Def. 56.1 ¶ 65, Nelson 56.1 ¶ 65.  She later began driving for UPS on from October 24, 1996 through January 1997, and received "very high ratings."  Nelson 56.1 ¶ 67.  Nelson contends that FedEx employee Susan Matlock "prevented" her "from returning to FedEx as a courier" after turning 40 years old.  Nelson 56.1 ¶ 68.

Against this factual background, the Court turns to the legal issues presented by the instant motion.  Ultimately, the Court

concludes that all of the plaintiffs' claims fail on the merits.
Before turning to that ultimate conclusion, however, the Court also
notes that the federal age discrimination claims brought by
plaintiffs Holowecki, Moncalieri, Trompics, Lewis, Martinez, and
Nelson are untimely because they failed to comply with the ADEA's
time-limit requirements set forth in 29 U.S.C. § 626(d).  Under the
so-called "piggybacking rule," "where one plaintiff has filed a
timely EEOC complaint, other non-filing plaintiffs may join in the
action if their individual claims arise out of similar discriminatory
treatment in the same time frame."  Snell v. Suffolk County, 782 F.2d
1094, 1100 (2d Cir. 1986) (internal quotations omitted).  Where, as
here, the alleged discrimination affects a large group, "there must
be some indication that the grievance affects a group of individuals
defined broadly enough to include those who seek to piggyback on the
claim.  Such a claim alerts the EEOC that more is alleged than an
isolated act of discrimination and affords sufficient notice to the
employer to explore conciliation with the affected group."  Tolliver
v. Xerox Corp., 918 F.2d 1052, 1058 (2d Cir. 1998).

     In the earlier appeal of this case, which was from the grant
of a motion to dismiss, the Second Circuit held that non-filing
plaintiffs, including Holowecki, could piggyback onto plaintiff
Kennedy's EEOC charge of discrimination, noting that:

> Like the Holowecki complaint, Kennedy's questionnaire
> described the allegedly discriminatory policies, such
> as the Best Practices Pays, Minimum Acceptable
> Performance Standards, and other discriminatory
> practices, in detail.  Kennedy's questionnaire also
> provided notice that the policies were affecting a wide

17

range of FedEx employees.  The affidavit stated, for
instance, that the Best Practice Pays policy "has
systematically targeted myself and others."  Moreover,
it stated that "management has continually picked at me
and other older couriers emotionally and financially by
changing our "start times" and that Kennedy knew she
was "not alone" because "many older couriers" shared
her "doubts and fears."  Kennedy concluded by stating
that FedEx must be forced to stop its discriminatory
policies so that "we can finish out our careers" absent
discriminatory practices.

Holowecki, 440 F.3d at 569.  The Supreme Court, as noted, affirmed.

    Now, however, on a motion for summary judgment, it is clear

with the benefit of discovery and a complete factual record that the

allegations set forth in Kennedy's charge are not "sufficiently

similar" to the facts underlying many of the named plaintiffs'

claims, thus preventing those plaintiffs from piggybacking onto

Kennedy's charge.  As noted, Kennedy's charge related to FedEx's

alleged discriminatory application of its BBP and MAPS programs.  The

stated reason for Holowecki's termination, however, was that he acted

inappropriately towards a co-worker, not that he violated any of the

BPP or MAPS policies.  Indeed, the undisputed facts demonstrate that

Holowecki never had any problems with meeting his performance goals.

Similarly, Moncalieri is not complaining of FedEx's application of

its BPP or MAPS policies, but instead that his retirement resulted

from him not being allocated a full-time position after he

transferred back to the New Jersey station.  Although Trompics

alleges that she retired because of age discrimination, there is no

evidence that such discrimination resulted from failing to meet

performance standards or receiving low performance reviews based on

allegedly discriminatory policies.  So, too, the claims asserted by Lewis, Martinez, and Nelson (and evidence submitted in support of those claims) all relate to FedEx's application of its medical leave of absence policies.  Further, to the extent that Holowecki, Moncalieri, Trompics, Lewis, Martinez, and Nelson attempt to rely on McQuillan's EEOC charge (filed on July 29, 1998), see Pl. Ex. 48, the evidence underlying those plaintiffs' claims likewise bears no relationship to the allegations set forth in McQuillan's charge, which relate to FedEx's performance goals and its application of its BPP and MAPS policies.  Thus, because none of these plaintiffs' claims "arise out of similar discriminatory treatment in the same time frame" as Kennedy's or McQuillan's charges, Snell, 782 F.2d at 1100, they may not receive the benefit of the piggybacking rule.

Further, Kennedy's charge (filed in December 2001) was not filed within 300 days of Holowecki's termination (in February 2000), Moncalieri's retirement (in June 2000), or Nelson's termination (in June 1996).  Because these three plaintiffs could not have filed a timely charge at the time of Kennedy's charge, i.e., because each of these plaintiffs' 300 days had already run, they cannot piggyback onto Kennedy's charge.  See Avagliano v. Sumitomo Shoji America, Inc., 103 F.R.D. 562, 578 (S.D.N.Y. 1984) ("those individuals who terminated their employment . . . prior to the 300-day cutoff may not join the class").  Indeed, if the piggybacking rule were permitted to allow a time-barred plaintiff's claim to be revived each and every time a subsequent plaintiff files a charge, the 300-day cutoff for

filing an EEOC charge would be rendered a nullity.  See Morton v. ICI Acrylics, 69 F. Supp. 2d 1038, 1044-45 (W.D. Tenn. 1999) ("[t]he interpretation of the rule urged by Plaintiffs . . . would effectively eviscerate the statute of limitations . . . At some point in time, employers should be able to conclude that discharged employees can no longer bring claims").[3]

Independent of the foregoing, however, and assuming arguendo that all of the plaintiffs' claims are timely, all of their claims nevertheless fail on the merits.  Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

Prior to the Supreme Court's recent decision in Gross v. FBL Financial Services, Inc., 557 U.S. __ (2009) -- rendered after this Court issued its "bottom-line" ruling on the instant motion on December 31, 2008 -- ADEA cases were subject to the so-called "burden shifting" analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1993).  Under this approach, a plaintiff, in order to establish a

---

[3] In the previous appeal of this action, the Second Circuit remanded for a determination as to whether Robertson's and McQuillan's suits were filed within 90 days of receiving their right-to-sue letters.  See Holowecki v. Fed. Express Corp., 440 F.3d 558, 570 (2d Cir. 2006).  The Court need not resolve this issue, however, because even assuming that these plaintiffs' suits were timely filed, their claims nevertheless fail on the merits, as discussed below.

prima facie case of age discrimination under the ADEA, must
demonstrate that (1) he or she is a member of the protected class
(i.e., age 40 or older); (2) he or she is qualified for his or her
position; (3) he or she suffered an "adverse employment action"; and
(4) the circumstances surrounding that action give rise to an
inference of age discrimination.  Abdu-Brisson v. Delta Air Lines,
Inc., 239 F.3d 456, 466-67 (2d Cir. 2001).  If a plaintiff
successfully presents a prima facie case, the defendant may rebut it
by articulating legitimate, non-discriminatory reasons for the
adverse employment action.  Spence v. Maryland Cas. Co., 995 F.2d
1147, 1155 (2d Cir. 1993).  Once the employer has done so, the burden
shifts back to the plaintiff to come forward with evidence that the
defendant's explanations are merely pretextual and that the
defendant's actual motivations were, more likely than not,
discriminatory.  Id.  At this point, the burden-shifting presumptions
disappear, and the real question in adjudicating a defendant's motion
for summary judgment becomes "simply whether the evidence in
plaintiff's favor, when viewed in the light most favorable to the
plaintiff, is sufficient to sustain a reasonable finding that her
dismissal was motivated at least in part by age discrimination."
Tomassi v. Insignia Fin. Group, 478 F.3d 111, 115 (2d Cir. 2007).

Gross changes the latter formulation by making clear that age
discrimination must be the "but-for" cause of the adverse action and
not just a contributing factor.  557 U.S. __, slip op. at 9.  Whether
Gross, by implication, also eliminates the McDonnell Douglas burden-

21

shifting framework in ADEA cases was left open by the Court, id. at 7 n.2, and need not be decided here either, because, regardless of whether or not the framework continues to apply, the undisputed facts (or where disputed, taken most favorably to plaintiffs) demonstrate that all twelve plaintiffs have failed to make out even a colorable case of age discrimination. Indeed, this Court, in its "bottom-line" Order of December 31, 2008, reached this conclusion even when applying the pre-Gross legal standards, which were more favorable to plaintiffs than those set forth in Gross. Summary judgment in favor of FedEx is thus required as to all claims.[4]

Taking each of the plaintiffs individually, plaintiff Holowecki has not pointed to any evidence that supports an inference that his termination was the product of age discrimination. Although he contends that his daily stop count increased over time because his manager favored Ms. Persic, a younger courier, the undisputed

---

[4] The analysis has hitherto been identical for plaintiffs' age discrimination claims brought under the ADEA and under state law. See Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360 (2d Cir. 1993) (Holowecki, McQuillan); Detz v. Greiner Indus., 224 F. Supp. 2d 905, 910 (E.D. Pa. 2002) (Almendarez; Mutchler); Cherry v. Thermo Electron. Corp., 800 F. Supp. 508, 511 (S.D. Mich. 1992) (Trompics); Waldron v. SL Indus., Inc., 849 F. Supp. 996, 1000 (D.N.J. 1994) (Moncalieri, Demaio); Duffy v. Lowe's Home Ctrs., 414 F. Supp. 2d 1133, 1141 (M.D. Fla. 2006) (Kennedy); Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 354 (2000) (Lewis and Martinez); Schoolman v. UARCO, Inc., No. 94-5598, 1996 U.S. Dist. LEXIS 9615, at *28 (N.D. Ill. July 8, 1996) (Robertson); Duffy v. Lowe's Home Ctrs., 414 F. Supp. 2d 1133, 1141 (M.D. Fla. 2006) (Nelson). Again, whether or not Gross changes this analysis is irrelevant here, since plaintiffs' claims fail even under the pre-Gross state standards.

evidence indicates that <u>all</u> couriers' stop counts at his station increased during the relevant time period.

Furthermore, Holowecki has failed to come forward with admissible evidence to rebut or even cast in doubt FedEx's evidence that Holowecki was terminated because of his inappropriate conduct towards Ms. Persic.  To be sure, Holowecki denies that he engaged in that conduct; but the issue is not the truth of the allegations that led to the adverse action, but instead, "what motivated the employer." <u>McPherson v. N.Y. City Dep't of Educ.</u>, 457 F.3d 211, 216 (2d Cir. 2006).  Here, Holowecki does not deny that Ms. Persic made the allegation, that the allegation related to certain vulgar and derogatory words he used, and that this conduct was the stated reason for his termination.[5]  In the face of that stated reason, Holowecki has failed to offer any evidence of pretext.  Although he baldy states that age was a factor in his termination because of his "years of service" and "age," he also notes that he does not believe that he was singled out for termination because of those factors.  Holowecki does identify a handful of younger couriers who "remained employed" at his station after his termination, but fails to demonstrate how

---

[5] Holowecki has moved to disallow, on hearsay grounds, the use of the Malebranche Declaration, which sets forth details concerning the reasons for Holowecki's termination.  That declaration, however, primarily consists of non-hearsay statements based on Ms. Malebranche's personal knowledge, after her memory had been refreshed with a document that she authored after supervising an investigation of Ms. Persic's complaint. In any event, even setting aside that declaration, FedEx has offered more than sufficient evidence of a legitimate reason for Holowecki's termination, including the deposition testimony of Ms. Persic and of Holowecki himself.

any of these individuals were treated differently under circumstances similar to his.  Because Holowecki has offered nothing more than conclusory allegations in support of his age discrimination claim, and because, in any event, he has proven unable to point to any evidence demonstrating that the articulated reason for his termination was a pretext for discrimination, his claim must be dismissed.

Plaintiff McQuillan's claim likewise fails.  McQuillan concedes that there is no evidence or facts that indicate that he was terminated because of his age, but nevertheless contends that he believed that "age was a significant factor" in his termination. There is no indication that FedEx management ever stated that its actions were related to age, or that any age-related comments were made to McQuillan.  FedEx's alleged refusal to allow McQuillan to apologize to the customer who complained about his conduct is beside the point.  Because the only evidence supporting McQuillan's prima facie case is his own subjective belief that he was discriminated against, summary judgment is appropriate.  See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 661 (2d Cir. 1997) (finding no inference of age discrimination where plaintiff "could not recall any action or statement by [defendant] that showed age discrimination," and "could only say that [defendant] smiled at her less approvingly" as her tenure wore on).

Likewise, McQuillan has failed to rebut the evidence proffered by FedEx as to what motivated his termination.  Indeed,

24

McQuillan does not dispute that the stated reasons for his termination were his receipt of three performance reminders relating to his being found in front of a Dunkin Donuts after complaining that he had too many packages to deliver and the allegations of inappropriate conduct towards a co-worker and customer.  Further, as noted, McQuillan also concedes that he does not know of any facts or evidence to support his belief that age was a factor in his termination, and instead notes, without supporting evidence, that the BPP program discriminates unfairly against older workers.  Although McQuillan argues that he did not engage in any of the alleged inappropriate conduct that led to his termination, the truth of those allegations are irrelevant in an age discrimination case, so long as age was not the motivating factor in the employer's actions.  See McPherson, 457 F.2d at 216.

Further, while McQuillan points to four other younger couriers who he says "were treated more favorably than he was," he does not even attempt to demonstrate that these couriers were so treated under circumstances similar to McQuillan's.  McQuillan also notes that Thomas Iaccarino, (a non-party) was terminated under similar circumstances in 2005, but offers no evidence that Iaccarino's termination related to age.  In short, McQuillan has wholly failed to adduce admissible evidence from which a reasonable fact finder could conclude that he was terminated because of his age.

Plaintiff Almendarez, though reciting his age and seniority, has failed to provide any admissible evidence whatsoever giving rise

to an inference of age discrimination.  Likewise, he has failed to

adduce any admissible evidence calling into question that the stated

reason for his termination (viz., the falsification of delivery

records) was not the real reason.  To be sure, Almendarez disputes

the charges asserted against him, and argues that there are genuine

issues of material fact as to whether he actually falsified the

records.[6]  But, as previously noted, this argument entirely misses

the point that the ADEA allows employers to discharge employees for

any reason, so long as that reason is not a pretext for age

discrimination, and relevant evidence would therefore be evidence

that suggests, at least circumstantially, that the stated reason was

a pretext for such discrimination.  Almendarez has wholly failed to

adduce any such evidence.  While Almendarez points to younger

couriers at his station who did not receive as many counselings or

warning letters as he did, he has failed to demonstrate how any of

these couriers were treated differently under circumstances similar

to Almendarez on account of their age.  In short, because Almendarez

both fails to show age discrimination and offers no evidence to

demonstrate that any improper discriminatory motives were behind the

stated reasons for his termination, his claim fails.

Plaintiff Moncalieri's claim is for constructive discharge,

but this claim also must be dismissed on summary judgment.  A

---

[6] Almendarez contends that certain records of improper
deliveries are inadmissible, see Pl. 56.1 ¶ 17, but even without
those records, the undisputed evidence demonstrates that FedEx
based its termination of Almendarez on his alleged falsification
of delivery records.

constructive discharge occurs when an employer "deliberately makes an employee's working conditions so intolerable that the employee is forced into voluntary resignation." Spence v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993). A constructive discharge cannot be shown if the employee merely "disagreed with the employer's criticisms of the quality of his work, or did not receive a raise, or preferred not to continue working for that employer. Nor is the test merely whether employee's working conditions were difficult or unpleasant." Id. Instead, a plaintiff must present evidence sufficient such that a reasonable finder of fact could find that the employer deliberately created working conditions that were "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983).

Moncalieri, however, has failed to point to any evidence of intolerable working conditions. There is no evidence of abusive or ageist comments, he received consistently average performance ratings throughout his time at FedEx, and his hourly rate was above market level. Although he states that he was "left with no alternative" but to resign, the entirety of his resignation letter and other undisputed facts indicate that he resigned solely because he transferred back to New Jersey where no full-time jobs were available. Indeed, he noted at the time that FedEx "was a company I truly enjoyed working for." Such a statement is entirely inconsistent with an employee who views his working conditions as

being so intolerable as to compel any reasonable person to resign.
Nor is there any evidence that FedEx wanted Moncalieri to leave, or
that he participated in FedEx's internal appeal process, see Lee
Decl. Ex. 3, thus further precluding a finding of constructive
discharge.  See, e.g., Spence, 995 F.2d at 1158 (no constructive
discharge where plaintiff had a "quite effective alternative to
resignation," viz., "[h]e could have lodged a complaint").

          Nor is there any evidence that Moncalieri was treated any
differently because of his age.  Moncalieri contends that FedEx
"caused" his termination because it failed to give him a full-time
position, but has failed to offer any evidence demonstrating that
FedEx was under any obligation to give Moncalieri a full-time
position post-transfer.  Plaintiff notes that three younger couriers
were hired at Moncalieri's New Jersey station, but those workers did
not work as couriers in Moncalieri's station until after Moncalieri
resigned, and there is no evidence that FedEx refused to offer
Moncalieri a position because of his age, waited for him to retire,
and then subsequently offered positions to these younger couriers.
In light of the foregoing, and in the absence of any triable fact,
summary judgment must be granted.

          Plaintiff Trompics' constructive discharge claim fails for
similar reasons.  As with Moncalieri, the record is entirely bereft
of any evidence that establishes intolerable working conditions.  She
consistently received above-average performance reviews, her hourly
rate was at market level, she only received one notice of deficiency

28

in her last four years of employment, and, as with Moncalieri, there is no evidence that Trompics participated in FedEx's internal appeal process.  Further, the record lacks any evidence indicating that Trompics, who was hired at age 44, was treated any differently because of her age, and there is no evidence of any abusive or ageist comments directed towards her.  Although Trompics notes that she "could not last six months because of harassment," she offers no facts to support her subjective belief, and her bald assertion that she was the oldest courier in her station is insufficient to give rise to an inference of age discrimination.  Similarly, although Trompics contends that her hours decreased over time, there is no evidence linking this alleged decrease in hours to age discrimination.  In light of all of the foregoing facts, and for all of the foregoing reasons, summary judgment dismissing Trompics' claim must be granted.

FedEx is likewise entitled to summary judgment as to all claims asserted by plaintiffs Kennedy, Mutchler, and Demaio, all of whom remain active FedEx employees.

Plaintiff Kennedy attempts to establish her case by arguing that she was given significantly lower hours than "younger" couriers during the period 2003-2005.  Although a "demotion evidenced by a decrease in wage or salary" is sufficient to establish an adverse employment action, Gabalya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000), here the undisputed facts plainly demonstrate that Kennedy took numerous leaves of absences during the

relevant time period, thus undercutting any claim that she was allocated a disproportionally low number of hours.  Indeed, although Kennedy seeks to compare her regular and overtime hours to those of a small handful of other cherry-picked couriers, such "analysis" falls far short of what is necessary to survive summary judgment. Kennedy's comparisons fail to take into account "other" hours as tracked by FedEx, see Declaration of Susan E. Stewart, and, in any event, focus on such a narrow and unrepresentative sample of younger couriers at her station so as to render such comparisons entirely unreliable and unhelpful to the trier of fact.  Pasha, 135 Fed. Appx. at 490, if admissible at all (which is doubtful) under Fed. R. Evid. 702.  The misleading and inaccurate nature of plaintiffs' comparisons is only further emphasized when placed in the context of the more complete and exhaustive comparisons offered by FedEx.  See Kennedy Reply Mem. at 2-6.  Although Kennedy notes that she subjectively "felt" that she was being discouraged from taking a particular route and that her start time was changed because of her age, she has failed to point to any specific evidence in support of those contentions.

Further, even assuming that Kennedy has satisfied her burden of establishing an adverse employment action (which she has not), it is obvious that age discrimination cannot be inferred given the undisputed facts in her case.  Specifically, although Kennedy repeatedly complained that "younger" couriers received preferential treatment, she nevertheless emphasized that she was referring to

30

"less senior" employees, i.e., those employees with less experience.
In so noting, Kennedy observed that those "younger" couriers with
"less seniority" who received preferential treatment included new
hires such as Owen Buyers (age 52 and older than Kennedy).   Nor has
Kennedy identified any age-related comments or any other
circumstantial evidence giving rise to an inference of age
discrimination.   In the absence of any causal link between Kennedy's
age and any alleged discriminatory conduct, summary judgment must be
granted.

Plaintiff Mutchler's claims fail for similar reasons.   Like
Kennedy, Mutchler contends that his hours began decreasing over time
and that he was given significantly lower hours than younger
couriers.   In support of these contentions, Mutchler points to the
hours of one cherry-picked courier (two in 2004).   Such comparisons,
like those offered by Kennedy, are so utterly unreliable and offer
such a skewed perspective of the hours allocated to couriers at
Mutchler's station that even if admissible (which is doubtful), they
fall far short of establishing anything close to an adverse
employment action.   If anything, they merely demonstrate that
Mutchler's regular hours remained constant throughout the relevant
time period.   To the extent that Mutchler's comparisons somehow
manage to hint at an adverse employment action, FedEx has offered
more than sufficient evidence to place such comparisons in context
and to demonstrate that Mutchler did not lose any hours to younger
couriers.   Although Mutchler notes that a younger courier with less

31

experience received a manager position, there is no evidence
demonstrating that he ever applied for that position.  Further,
although he generally asserts that he "believes" that his age was
considered by FedEx when setting his regular and overtime hours and
that younger couriers received preferential treatment, Mutchler fails
to offer any evidence in support of these subjective beliefs.  In
other words, to the extent that Mutchler has demonstrated that he
suffered an adverse employment action, he has failed to show how such
action bore any relation whatsoever to his age.  Without any evidence
demonstrating that Mutchler suffered an adverse employment action,
and, in any event, without any evidence giving rise to an inference
of age discrimination, summary judgment must be granted.

Plaintiff Demaio, likewise, has failed to offer any evidence
indicating that his termination in 2004 resulted, even in part, from
age discrimination, and, in any event, Demaio has proven unable to
demonstrate that FedEx's stated reason for Demaio's termination was
pretextual.  Moreover, although Demaio contends that his hours were
reduced over time, the evidence plainly indicates that for the years
2002 and 2003 his hours exceeded the average hours of both older and
younger couriers, and that for the years 2004 through 2006, any
reduction in hours resulted from his voluntary limitation of work
time caused by family and personal circumstances.  Indeed, the record
is devoid of any evidence demonstrating that FedEx unilaterally
decided to reduce Demaio's hours or denied any request for an
increase in hours.

Even assuming contrary to fact that Demaio has succeeded in showing an adverse employment action, he nevertheless has failed to demonstrate that such action occurred in circumstances giving rise to an inference of age discrimination.  Indeed, to the contrary the undisputed (and rebutted) evidence demonstrates that couriers over the age of 40 at Demaio's station did not experience the decline in hours that Demaio had in 2005 and 2006, and that, in fact, those couriers had higher average hours than the average hours for couriers under the age of 40 in 2002, 2003, 2005, and 2006.  Def. 56.1 Exs. F and G.  Demaio attempts to offer cherry-picked examples of older couriers at Demaio's station who experienced a reduction in hours, see Pl. Opp. at 6, but these couriers' hours are, in fact, higher than the average hours worked by younger couriers in every year between 2001 and 2006.  See Def. 56.1 Ex. F.  Any decrease in hours experienced by these, or other, couriers must be attributed to age in order to giving rise to an inference of age discrimination, a link that Demaio has failed to prove.

Although Demaio complains of preferential treatment allegedly being given to a marginally younger co-worker, it is well-established that an inference of age discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996).  While there is no bright-line rule "as to the degree of age discrepancy that can or cannot support an inference of discriminatory intent," Woodman v. WWOR-TV, Inc., 411 F.3d 69, 78 (2d Cir. 2005), in

the circumstances of this case Demaio's vague allegations of
preferential treatment being given to someone three years his junior
is insufficient, as a matter of law, to give rise to an inference of
age discrimination. <u>See</u> <u>id.</u> (a "1-year age discrepancy, without
more, will not likely support an inference of discriminatory
intent"); <u>Faas v. Sears, Roebuck & Co.</u>, 532 F.3d 633m 643 (7th Cir.
2008) (four-year age difference is "not a significant enough
disparity in age"); <u>Dunaway v. Int'l Bhd of Teamsters</u>, 310 F.3d 758,
767 (D.C. Cir. 2000) (seven-year age difference not sufficient to
show replacement by younger employee).

The undisputed evidence does demonstrate that one of Damaio's
managers told him that he was "too old for the job."  However,
because the manager who made that comment was not Demaio's direct
supervisor and was not responsible for scheduling Demaio's hours, see
Davis Decl. ¶¶ 5-6, any remark attributed to him does not, standing
alone, support any inference of age discrimination. <u>See</u> <u>Sino v. New
York City Bd. of Educ.</u>, No. 99-9327, 2000 U.S. App. LEXIS 8602, at *4
(2d Cir. May 1, 2000) ("even if Blair did make the alleged
statements, they do not give rise to an inference of discrimination
because she did not make hiring decisions"); <u>see</u> <u>also</u> <u>Ezold v. Wolf,
Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray
remarks by non-decisionmakers or by decisionmakers unrelated to the
decision process are rarely given weight").  Indeed, the record is
devoid of any evidence of any other words, actions, or circumstances
giving rise to an inference of age discrimination.  Accordingly,

34

taken together, the undisputed facts (or, where disputed, taken most favorably to Demaio) cannot support any claim for age discrimination.

Plaintiffs Lewis, Martinez, Nelson, and Robertson (all of whom were terminated after going on medical leaves of absence) also cannot survive summary judgment.  First, none of these plaintiffs can proceed under a disparate impact theory, because they have failed to present any statistical evidence demonstrating what (if any) impact FedEx's medical leave policy has on couriers based on their respective ages.  See, Smith v. Xerox Corp., 196 F.3d 358, 365 (2d Cir. 1999) (in order to succeed on a disparate impact claim, plaintiff must present statistical evidence "of a kind and degree sufficient to show that the practice in question has caused the [discriminatory practice] because of their membership in a protected group"); Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 160 (2d Cir. 2001) ("statistical proof almost always occupies center stage in a prima facie showing of a disparate impact claim").

Nor can any of these four plaintiffs successfully proceed under a disparate treatment theory.  Taking each of these four plaintiffs in turn:

Plaintiff Lewis, it is undisputed, was injured and incapable of being courier.  Thus, to the extent that her claim rests on a theory that she was improperly denied a job as a courier, she has failed to demonstrate that she was qualified for that position.  Further, to the extent that the alleged discrimination here is termination, in the circumstances of this case, Lewis' "termination"

35

is not a "discharge" for purposes of the ADEA.  See, e.g., Weihaupt
v. Amer. Med. Ass'n, 874 F.2d 419, 425 (7th Cir. 1989) ("a discharge
based on [] poor health is not actionable under the ADEA").  Indeed,
as the Second Circuit has observed:

> An employer is entitled to insist on as high a standard
> of work performance as it deems appropriate, and the
> fact that an employee develops stress-related ill
> health from the demands of his voluntarily undertaken
> position or from criticisms of his performance, and as
> a result determines that health considerations mandate
> his resignation, does not normally amount to a
> constructive discharge by the employer.

Spence v. Md. Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993).  Although
Lewis testified that she heard a handful of comments regarding "older
couriers," placed in context, such comments merely referred to
"experienced couriers," and, in any event, such comments are, at
most, "stray comments" that are insufficient to give rise to
liability under the ADEA.  See Danzer v. Norden Sys., Inc., 151 F.3d
50, 56 (2d Cir. 1998).

Lewis has also failed to adduce admissible evidence
suggesting that any of FedEx's legitimate, non-discriminatory reasons
for terminating Lewis were pretextual.  The parties do not dispute
the reasons given for Lewis' termination, nor do they dispute that
while Lewis was out on leave, her manager implored her to return.
Lewis argues that injured younger couriers were "always" given an
opportunity to return to work on their old routes, but provides no
evidence that these couriers were treated differently than older
couriers; pursuant to FedEx's leave policy, Lewis had an opportunity

to return (and was implored to do so), but could not within the requisite amount of time. Plaintiff baldy notes that "FedEx deliberately offered Plaintiff Lewis a position at another FedEx station which would have required Plaintiff Lewis to drive over 500 miles round trip each day," but without evidence that other positions were available closer to her home, such an assertion is irrelevant to the instant motion. Indeed, the undisputed facts indicate that FedEx told Lewis that she would receive placement preference for any new position that became available. Plaintiff also notes that a younger courier's request for a 4-wheel drive truck was granted while her request was denied, but this contention is both irrelevant to her claim of age discrimination based on her termination pursuant to FedEx's medical leave policy, and falls far short of establishing an independently actionable adverse employment action. Accordingly, for all of these reasons, summary judgment must be granted as to all of plaintiff Lewis' claims.

Plaintiff Martinez has failed to demonstrate that she was qualified for a courier position; indeed, to the contrary, the undisputed facts show that her doctor told her that she could no longer work as a courier, and she herself contends that she either was ineligible for the replacement jobs she was offered, or did not want them because they were for out-of-state positions. Further, as with Lewis, Martinez's termination was not a "discharge" for purposes of the ADEA, and thus cannot give rise to an age discrimination claim. Martinez has also failed to adduce admissible evidence

37

indicating that the stated reason for her termination, viz., her inability to obtain a position that she was able to perform, was pretextual.  Indeed, Martinez does not dispute the stated reasons for her "termination," and testified that she did not know whether FedEx's disability policy was applied differently to younger couriers.  There is no evidence that FedEx intentionally prevented her from procuring a suitable replacement position, or that younger couriers were treated differently.  Summary judgment dismissing her claim is therefore required.

Plaintiff Robertson's claims fail for similar reasons.  The undisputed evidence shows that Robertson and his doctor both contended that he was "unable to work," thus indicating that he was not qualified for a courier position.  Further, as with plaintiffs Lewis and Martinez, to the extent that the alleged discriminatory conduct took the form of termination, Robertson's termination is not a "discharge" for purposes of the ADEA.  Together with the absence of any evidence that establishes an inference of age discrimination, FedEx has offered an unrebutted, legitimate, non-discriminatory reason for terminating Robertson.  Although Robertson contends that FedEx improperly applied its policy regarding the use of vacation time when reporting for Temporary Restricted Work and disagreed with one physician's opinion regarding his ability to work, there is no evidence that FedEx acted differently towards Robertson than it did towards younger couriers, and, as noted, a violation of company policy is insufficient for a finding of age discrimination.  For all

of these reasons, summary judgment is required as to Robertson's claims.

Plaintiff Nelson's claim likewise must be dismissed.  In fact, Nelson was 39 years old when she was terminated, and thus was not a member of a protected class.  Nelson contends that she was "not permitted to return to work" when she recovered, but this bald contention forms an insufficient basis from which to infer an adverse employment action.  Moreover, as with Lewis, Martinez, and Robertson, plaintiff Nelson was not qualified for the job in question, because she was injured, and likewise was not "discharged" for purposes of the ADEA.  Finally, Nelson has failed to point to any evidence giving rise to an inference of age discrimination.  Summary judgment is therefore required.

Although each of the plaintiffs' claims thus fails individually, the Court must also consider whether this changes when they are considered together.  But, in fact, they have almost nothing in common that would make such analysis meaningful.  To be sure, plaintiffs purport to rely on certain raw numbers and statistics that allegedly demonstrate that a disproportionally small number of FedEx couriers with twenty or more years of service reached full or "normal" retirement age at the company, see Pl. Exs. 54, 55, thus allegedly giving rise to an inference of age discrimination.  Specifically, plaintiffs seek to prove that between 1994 and 2006, only 52 FedEx couriers with twenty or more years of service took either normal or early retirement.  Such figures, though, are both

inaccurate and misleading, and, in any event, irrelevant to the
instant motion.  As an initial matter, it is hardly surprising that
the number of couriers retiring from FedEx with more than twenty
years of experience during that period is low, at least in relative
terms, because FedEx itself only began delivering packages in 1973.
Moreover, these statistics only relate to couriers "with twenty or
more years of continuous service in the same courier job code," Pl.
Ex. 54 (emphasis added), and thus fail to take into account those
couriers that changed job codes during their employment with FedEx.
In other words, plaintiffs' "statistical analysis" improperly assumes
that all FedEx employees who are hired as couriers also retire as
couriers within that same job code, an assumption that has no factual
basis in the evidence.  Notably, the undisputed evidence demonstrates
that five of the twelve named plaintiffs in this action changed job
codes during their careers.  See Defendant's Reply to Plaintiff's
Supplemental Memorandum Ex. A.  If any of these plaintiffs had
retired with twenty years' experience as a "courier," he or she would
not have been included in plaintiffs' statistical analysis.  Further,
out of FedEx's fourteen current job codes, see Declaration of Tricia
J. Lee in Support of Defendant's Reply to Plaintiffs' Supplemental
Memorandum ("Lee Reply Decl.") ¶ 3 and Ex. 1, several were not even
in existence in 1986, see id. ¶ 5 and Ex. 3, and thus any courier in
those job codes after 1986 necessarily could not have retired with 20
or more years of continuous service in the same courier job code.
The unreliability of plaintiffs' proffered evidence is further
underscored by the fact that, when all couriers in all job codes are

taken into account, 1,476 couriers retired from FedEx between 1994 and 2006, 524 of which were over the age of 60, 142 of which had over 20 years of experience, 19 of which were over 65 with more than 20 years of service, and 132 of which had over 25 years of employment. See Lee Reply Decl. Ex. 4.

Plaintiffs' proffered statistical evidence is therefore insufficiently reliable to be admissible under Fed. R. Evid. 702. But even if it were admissible, it bears no significance to defendant's pending motions. The one-page, two-paragraph declaration submitted by plaintiffs' expert, Daniel Hamermesh, Ph.D., generally asserts that the "observed retirement rate" of FedEx couriers "is statistically significantly below the expected retirement rate" of "typical" American workers. Pl. Ex. 56. Dr. Hamermesh offers no data to support these assertions, however, nor is there any indication that his conclusion is based on personal or specialized knowledge, investigation, or review. See, e.g., id. ("I have been informed by Counsel that . . .").

More fundamentally, statistics concerning the national retirement rate are immaterial to the question presented here, viz., whether FedEx treats its employees in an age-neutral fashion, and whether its employment practices — even if facially neutral — have a significantly discriminatory impact on a protected group. Smith v. City of Jackson, 544 U.S. 228, 239 (2005); see Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982) ("The ADEA does not require an employer to accord special treatment to employees over forty years of

age.  It requires, instead, that an employee's age be treated in a neutral fashion, neither facilitating nor hindering advancement, demotion, or discharge."). Specifically, although "gross statistical disparities . . . may in a proper case constitute prima facie proof of a pattern or practice of discrimination," Hazelwood School Dist. v. United States, 433 U.S. 299, 307-08 (1977), Dr. Hamermesh has failed to demonstrate that a group composed of "average" American workers is the proper representative sample for his comparison with FedEx couriers.  Nor has Dr. Hamermesh even attempted to account for or eliminate any of the numerous other non-age-related causes of the supposed statistical disparity.  See Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989) (without a showing of causation between the alleged discriminatory practice and the alleged statistical disparities, "employers [would be] potentially liable for the myriad of innocent causes that may lead to statistical imbalances in the composition of their work forces") (internal quotations and citation omitted).

For all of these reasons, plaintiffs' unsupported theory of age discrimination based on raw retirement numbers is both inadmissible under Rule 702, and, in any case, so fundamentally flawed that it cannot form the basis for support of plaintiffs' claims.  See Pasha v. William M. Mercer Inv. Consulting, Inc., No. 04-4381, 135 Fed. Appx. 489, 490 (2d Cir. 2005) (affirming summary judgment where "the statistics [plaintiff] set forth in his opposition papers were properly disregarded as unreliable); Lanahan

42

v. Mutual Life Ins. Co., No. 98-9174, 1999 U.S. App. LEXIS 9695, at
*5 (2d Cir. May 17, 1999) (plaintiff's "statistical evidence was not
probative of age discrimination because, its dubious admissibility
aside, it was incomplete and did not eliminate possible non-
discriminatory reasons for the attrition of older workers from
[defendant]"); cf. Smith v. Xerox Corp., 196 F.3d 358, 365 (2d Cir.
1999) (noting that plaintiffs must present statistical evidence "of a
kind and degree sufficient to show that the practice in question has
caused the [discriminatory practice] because of their membership in a
protected group").

Finally, to the extent that any plaintiff seeks to support
his or her claims with unsupported allegations that lack any
evidentiary basis, FedEx need not rebut, and the Court need not
consider, the validity of such claims. See Holcomb v. Iona College,
521 F.3d 130, 137 (2d Cir. 2008) ("a plaintiff must provide more than
conclusory allegations to resist a motion for summary judgment").

The Court has carefully considered all the remaining
arguments made by all plaintiffs in support of their claims, and
finds them entirely without merit. Accordingly, for all of the
foregoing reasons, the Court now reaffirms its prior order granting
summary judgment dismissing all plaintiffs' claims, and directs the
Clerk of the Court to close the case and enter final judgment
dismissing the case in its entirety.

SO ORDERED.

43

_____

JEB S. RAKOFF, U.S.D.J.

Dated:      New York, New York
            July 29, 2009